1

1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2
     - - - - - - - - - - - - - X
3
     UNITED STATES OF AMERICA,      : 20CR115 (ENV)
4                                   :
             Plaintiff,             :
5                                   :
          -against-                 : United States Courthouse
6                                   : Brooklyn, New York
     RAYMOND KOHUT,                 :
7                                   :
             Defendant.             : Tuesday, April 6, 2021
8                                   : 11:00 a.m.
                                    :
9    - - - - - - - - - - - - - X

10           TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
           BEFORE THE HONORABLE ERIC N. VITALIANO
11                UNITED STATES DISTRICT JUDGE

12                  A P P E A R A N C E S:

13   For the Government: MARK LESKO, ESQ.
                         Acting United States Attorney
14                         Eastern District of New York
                           271 Cadman Plaza East
15                         Brooklyn, New York 11201
                         BY:  MARK BINI, ESQ.
16                           ANN BRICKLEY, ESQ.
                             DEREK ETTINGER, ESQ.
17                           JON ROBELL, ESQ.
                             ALEJANDRA ARIAS, ESQ.
18                           Assistant United States Attorneys

19   For the Defendant:   FRIDMAN FELS & SOTO, PLLC
                          2525 Ponce de Leon Blvd, Ste 750
20                        Coral Gables, FL 33134
                        BY:ADAM SETH FELS, ESQ.
21                          ANEL VIAMONTES, ESQ.
                            ALEJANDRO SOTO, ESQ.
22

23   Court Reporter:    **SOPHIE NOLAN**
                        225 Cadman Plaza East/Brooklyn, NY 11201
24                      NolanEDNY@aol.com
     *Proceedings recorded by mechanical stenography, transcript*
25   *produced by Computer-Aided Transcription*

Proceedings                                    2

1              (Via videoconference.)

2          (The Hon. Eric N. Vitaliano, presiding.)

3               (Defendant present.)

4          THE COURTROOM DEPUTY:  The Court is now open.  The

5     Honorable Eric N. Vitaliano presiding.  The case on the

6     calendar is *USA versus Raymond Kohut*, 21-CR-115 on for a

7     guilty plea.

8              Please note that persons granted remote access to

9     proceedings are reminded of the general prohibition against

10    photographing, recording and rebroadcasting of court

11    proceedings.  Violation of these prohibitions may result in

12    sanctions including removal of court-issued media credentials,

13    restricted entry to future hearings, denial of entry to future

14    hearings or any other sanctions deemed necessary by the Court.

15             Will the court reporter please note her appearance

16    for the record.

17             THE REPORTER:  Sophie Nolan.

18             MR. BINI:  Mark Bini, Ann Brickley, Derrick,

19    Ettinger, Jon Robell, Alejandra Arias and Adam Schwartz for

20    the United States.

21             THE COURT:  Good morning Mr. Bini.  Did you bring

22    the whole team?

23             MR. BINI:  I brought the whole team.

24             THE COURTROOM DEPUTY:  Will counsel for the

25    defendant please note their appearance?

```
                         Proceedings                    3
```

1          MR. FELS:  Good morning, Your Honor.  This is Adam

2    Fels appearing on behalf of Raymond Kohut.  With me on the

3    call is my associate, Anel Viamontes and Alejandro Soto.

4          THE COURT:  Good morning.  You are coming to us from

5    Florida or are you in New York?

6          MR. FELS:  I am coming to you from Florida.

7          THE COURTROOM DEPUTY:  Would the defendant note his

8    appearance by stating his name on the record.

9          THE DEFENDANT:  Raymond Kohut.

10          THE COURT:  Good morning to you, Mr. Kohut.

11          THE DEFENDANT:  Good morning, Judge.

12          THE COURT:  Where are you located this morning?

13          THE DEFENDANT:  In Long Island, sir.

14          THE COURTROOM DEPUTY:  Counsel for both sides are

15    present, including defendant.

16          THE COURT:  Well, good morning all.  I don't know if

17    this is exactly what the CARES Act had in mind but we managed

18    to jerry the system.  I know my brother Sterling Johnson would

19    be very pleased that I am in a park-like setting.  I am

20    outside and you will hear outside noises.  So no one should be

21    shocked or surprised by that.  It could include dogs, geese,

22    babies and all sorts of other things that may be in the

23    neighborhood.  But we are, and with the grace of God we are at

24    the end of this pandemic, but we are not totally at the end.

25    People are still suffering and dying and we have an

Proceedings                                                   4

1   administrative order that permits that because of the these

2   extraordinary circumstances to take, among other things,

3   guilty pleas, by video and sometimes audio without rather than

4   all of us being physically at the same location.

5          Mr. Villanueva told me about your filings.  You have

6   all consented to this procedure.  We established that orally

7   on the record as we began.

8          So is my understanding correct, Mr. Fels, Mr. Kohut

9   has no objection to proceeding by way of this video conference

10  this morning?

11         MR. FELS:  Yes, Your Honor.  He has no objection.  I

12  explained to him his rights in this record and he knowingly

13  and voluntarily waives it.

14         THE COURT:  And, Mr. Bini, is the same true for the

15  Government?

16         MR. BINI:  Yes, Your Honor.  The Government consents

17  and notes the basketball team that represents the Government

18  includes me here in Brooklyn, but the rest of my partners are

19  out of state.  And, in addition, defense counsel for

20  Mr. Kohut, while Mr. Kohut is in Long Island, his defense

21  counsel is in Florida.  So, due to the continuing obligations

22  related to travel and entry to the courthouse, we certainly

23  appreciate the Court permitting us to hold this plea by video.

24         THE COURT:  I affirm all of that, and I believe in

25  the interest of justice, to continue to move what has been a

Proceedings                                            5

1   complicated case, to continue to move it along and that

2   includes this particular phase of it involving Mr. Kohut.

3          So with all of those niceties that are so important

4   to our system and in trying to reserve a sense of normalcy as

5   we go forward, lo these many months, we find that it is in the

6   interest of justice to proceed this morning.

7          What we are proceeding to, as I understand it

8   Mr. Fels is that Mr. Kohut will be entering a plea of guilty

9   to an Information; is that correct?

10          MR. FELS:  That is correct, Your Honor.

11          THE COURT:  And that being the case, we shall begin

12   with Mr. Villanueva swearing Mr. Kohut.

13          THE COURTROOM DEPUTY:  Mr. Kohut raise your right

14   hand:  Do you solemnly swear or affirm that the testimony you

15   are about to give will be the truth, the whole truth and

16   nothing but the truth, so help you God?

17          THE DEFENDANT:  I do.

18          (Witness sworn/affirmed.)

19          THE COURT:  Mr. Kohut, I must ask you a number of

20   questions before I can accept your guilty plea.  These

21   questions are designed to assure me that you understand the

22   charge against you, that you understand the consequences of

23   pleading guilty to that charge, that you understand the rights

24   that you would be waiving by pleading guilty, that your

25   decision to waive those rights and plead guilty is not only

1    knowing, but it is also voluntary.  And, lastly, you are going

2    to have to give me, under oath, answers when I ask you

3    questions facts that show indeed you are guilty of the charge

4    to which you plead guilty.

5            Therefore, the questions are important, and to the

6    extent you either do not hear them or do not understand them,

7    please let me know and I will repeat or rephrase them for you.

8    Do you understand that?

9            THE DEFENDANT:  Thank you, Your Honor.  Yes, I do.

10           THE COURT:  Now at this stage of a criminal

11   proceeding, like in all others in the United States, you are

12   you entitled to be represented by competent counsel.  If you

13   could not afford counsel, counsel would be appointed for you.

14   On the call of the calendar this morning, Mr. Fels has

15   indicated to me that he is your lead counsel for this case.

16   Is Mr. Fels your lead counsel for this case?

17           THE DEFENDANT:  Yes.  Mr. Fels is lead counsel, Your

18   Honor, yes.

19           MR. FELS:  Yes, Your Honor.

20           THE COURT:  And that means that at any point during

21   this hearing, Mr. Kohut, if you need to speak with him you

22   will please let me know and you will be permitted to speak to

23   him without any penalty whatsoever; do you understand that?

24           THE DEFENDANT:  Yes, I do, Your Honor.  Thank you.

25           THE COURT:  All right.  Now, you also took an oath

Proceedings                                           7

1   to tell the truth.  So that means that if you answer any of

2   the questions put to you at this hearing falsely, regardless

3   of who might ask the question, then those answers can be used

4   against you later in a separate prosecution for the crimes of

5   perjury or for making a false statement.  Do you understand

6   that?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  Now, with all of those understandings we

9   are going to back up to the beginning and I am going to ask

10  you to place on the record your full name.

11         THE DEFENDANT:  Raymond Kohut.

12         THE COURT:  And Mr. Kohut, how old are you?

13         THE DEFENDANT:  68.

14         THE COURT:  And what is the last grade you completed

15  in school?

16         THE DEFENDANT:  An MBA at Thunderbird in Phoenix,

17  Arizona.  It was in 1988, Your Honor.

18         THE COURT:  It was a good year, I think.

19         THE DEFENDANT:  I thought it was.

20         THE COURT:  It's a while ago, so.  Not everybody

21  around here, I'm sure, can even remember it too much.

22         But let me also ask you, are you currently or have

23  you recently been under the care of a medical doctor?

24         THE DEFENDANT:  I take high blood pressure pills,

25  and I saw a doctor last week and I'll be seeing a heart doctor

Proceedings                                    8

1  in May, and I have a heart examination in two weeks since I

2  have heart disease in my family.

3            THE COURT:  I know you can't tell from the color of

4  my hair, but welcome to the club.  It comes with age and it is

5  good to keep on top of these things.

6            THE DEFENDANT:  Thank you for asking, Your Honor.

7            THE COURT:  Well, the reason why we ask these

8  questions is it's important for the Court to understand what

9  you might be laboring under because, at the end of the day, I

10 have to make an assessment whether or not what you tell me by

11 the time we get to the end of this hearing is that you

12 actually know and are capable of understanding the waivers

13 that you make.  So it's important to know someone's health.

14 And, like the next question, which is are you currently or

15 have you recently been under the care of a psychiatrist?

16           THE DEFENDANT:  No, Your Honor.

17           THE COURT:  In the last 24 hours have you taken any

18 narcotic drugs?

19           THE DEFENDANT:  No, Your Honor.

20           THE COURT:  In the last 24 hours have you taken

21 medications of any kind?

22           THE DEFENDANT:  Yes, my blood pressure pills.

23           THE COURT:  Okay.  In the last 24 hours have you

24 consumed any alcoholic beverages?

25           THE DEFENDANT:  No, I have not, Your Honor.

Proceedings                                        9

1          THE COURT:  Have you ever been hospitalized or

2   treated for any mental illness?

3          THE DEFENDANT:  No, I have not, Your Honor.

4          THE COURT:  And have you ever been hospitalized or

5   treated for any addictions to drugs or alcohol?

6          THE DEFENDANT:  No, I have not, Your Honor.

7          THE COURT:  As you appear today in court by the

8   video hookup, is your mind clear?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And you understand what's going on about

11   you?

12          THE DEFENDANT:  Yes.

13          THE COURT:  All right.  Now, Mr. Fels, have you had

14   a full and fair opportunity to discuss this case with

15   Mr. Kohut?

16          MR. FELS:  I have, Your Honor.

17          THE COURT:  And based on your conversations with

18   him, do you believe that he understands the nature of these

19   proceedings?

20          MR. FELS:  I do, Your Honor.

21          THE COURT:  Do you believe he understands the nature

22   of the rights that he would be waiving by pleading guilty?

23          MR. FELS:  Yes, Your Honor.  I have explained to him

24   his rights and he does understand them, Your Honor.

25          THE COURT:  And based on your interactions with him,

1  do you believe that Mr. Kohut is competent to enter a plea of

2  any kind at this time?

3              MR. FEL:  Yes, Your Honor, I do.  He is competent.

4              THE COURT:  And in your interactions with him, have

5  you discussed the maximum sentence and fine that can be

6  imposed in this case?

7              MR. FELS:  I have, Your Honor.

8              THE COURT:  And have you also discussed with him the

9  operation of the sentencing guidelines in the context of

10  recent court decisions?

11             MR. FELS:  Yes, I have Your Honor.

12             THE COURT:  All right.  Mr. Kohut, Mr. Fels tells me

13  he believes that he has had a full and fair opportunity to

14  discuss your case with you.  Do you believe that you have had

15  a full and fair opportunity to discuss your case with him?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  And are you satisfied with the

18  representation and advice you have received?

19             THE DEFENDANT:  Yes, I am, Your Honor.

20             THE COURT:  Now, Mr. Bini, I'm going to ask you to

21  place on the record the charge or charges to which it is

22  anticipated that Mr. Kohut will enter a plea of guilty.

23             MR. BINI:  Yes, Your Honor.

24             The defendant is charged with a single count of

25  conspiracy to commit money laundering in violation of Title 18

Proceedings                                                11

1    U.S. Code, Section 1956-H.

2              THE COURT:  And the period of time and venue?

3              MR. BINI:  Yes, Your Honor.  It's for the time

4    period from approximately 2012 to August 2020 in the Eastern

5    District and elsewhere.  And in brief, the defendant is

6    charged with working for a European energy trading company

7    with subsidiaries in the United States and elsewhere that's

8    referred to in the Information as "Trading Company."

9              The defendant and others are charged as being part

10   of a bribery and money laundering conspiracy, to among other

11   things pay more than $22 million in bribes to Ecuadorian

12   government officials and winning business related to the

13   purchase of oil products from the state-owned and controlled

14   company in Ecuador call Petroecuador.

15             THE COURT:  Now, Mr. Kohut, is that charge or among

16   the charges that you discussed with Mr. Fels?

17             THE DEFENDANT:  Yes, Your Honor.

18             THE COURT:  And do you understand that charge?

19             THE DEFENDANT:  Yes, I do, Your Honor.

20             THE COURT:  Do you have any questions about that

21   charge?

22             THE DEFENDANT:  No, Your Honor.

23             THE COURT:  And was a copy of that charge presented

24   to you in writing for you to review?

25             THE DEFENDANT:  I believe it was, Your Honor.  I

Proceedings                                    12

1   believe it was, yes.

2           Adam, can you confirm that?

3           MR. FELS:  Yes.  Yes, it was, Your Honor.

4           THE COURT:  It was probably in what's called an

5   Information?

6           THE DEFENDANT:  Yes, that's correct, Your Honor.

7           THE COURT:  Okay.  Now, I am going to talk to you.

8   Have you talked to Mr. Fels about an Information or pleading

9   to an Information?

10          THE DEFENDANT:  We have reviewed the document, Your

11  Honor.

12          THE COURT:  Okay.  Now, let me tell you something

13  about why we pause to talk about this.  One of these things,

14  as I said to you earlier, we go over your rights, the rights

15  that you waive by pleading guilty.  One of the rights that you

16  have is the right to be prosecuted by way of a grand jury

17  indictment.  Felonies ordinarily are -- prosecution will begin

18  when the grand jury considers evidence and reports a bill of

19  indictment and that would start the prosecution.  It's a

20  Constitutional right to have the grand jury process.

21          It's also a right that a defendant can waive.  The

22  defendant can waive a grand jury indictment and accept

23  prosecution by way of a criminal Information that is filed by

24  the United States attorney.

25          So let's go over what all of that means.  A grand

Proceedings                                                13

1   jury you may be familiar with is a body of citizens that are

2   selected in a court proceeding.  There can be no more than 23

3   of them, there must be at least 16 of them, and before an

4   indictment can be voted, there must be 12 who agree on voting

5   the true bill of indictment.  And what happens?  Once a grand

6   jury is convened, the prosecutor can appear and present

7   evidence, evidence that would show to the satisfaction of the

8   grand jury that a crime has been committed and that a

9   particular person, upon the evidence that they present, is the

10  person who perpetrated the crime, and if a quorum of 12

11  believes and finds that way, then the indictment is voted and

12  the prosecution begins.

13          So today we are laboring under the understanding

14  that you will be waiving that process and pleading to an

15  Information, but we also have to consider what would happen if

16  you changed your mind between now and the next few minutes,

17  and did not want to proceed by way of Information.

18          Well, at that point the Government has a choice to

19  make.  The Government may present evidence to a grand jury and

20  then the grand jury would consider that evidence and they may

21  or may not vote to indict you, but this is what is certain, if

22  you waive your right to grand jury indictment and proceed by

23  way of Information, you will be prosecuted just as if the

24  grand jury had voted an indictment on this charge.

25          Do you understand that?

```
                         Proceedings                    14
```

1      THE DEFENDANT:  Yes, I do, Your Honor.

2      THE COURT:  And you've discussed your options with

3  Mr. Fels, as I understand you?

4      THE DEFENDANT:  Yes, Your Honor.

5      THE COURT:  Mr. Fels, do you know of any reason why

6  Mr. Kohut should not accept prosecution by way of Information?

7      MR. FELS:  I do not, Your Honor.

8      THE COURT:  And Mr. Kohut, what is your decision?

9  Do you wish to accept prosecution by way of Information and

10  waive your right to grand jury indictment?

11      THE DEFENDANT:  Yes, Your Honor.

12      THE COURT:  And I understand, and Mr. Villanueva,

13  will confirm this for me, that a written waiver is in your

14  possession?

15      THE COURTROOM DEPUTY:  That is correct, Judge.  It

16  is signed by the defendant and defendant's attorney as well.

17      THE COURT:  Mr. Kohut, you confirm that you did, in

18  fact, sign that document?

19      THE DEFENDANT:  Yes, I did Your Honor.

20      THE COURT:  Mr. Fels, did you sign it or one of your

21  colleagues sign it?

22      MR. FELS:  I signed it, Your Honor.

23      THE COURT:  All right.  The Court finds that the

24  waiver has been voluntarily accepted by the defendant and that

25  he voluntarily accepts with full knowledge prosecution by way

Proceedings                                        15

1   of Information.

2          Where do we go from here?  Well, we have got some

3   more rights to discuss.  Mr. Kohut, merely because you signed

4   and waived your rights to grand jury indictment, doesn't mean

5   that you have to plead guilty to the Information.  Nothing

6   else changes, so what does that mean?  Well, that means that

7   the Government still has an obligation to establish your guilt

8   beyond a reasonable doubt through evidence that is credible.

9          Now, the prosecutor may not, or perhaps cannot, meet

10  his burden of proof, and if that were to be the case, then a

11  jury considering the charges would be obligated to find you

12  not guilty even if you are guilty.  So what does that mean?

13  Well, that means that even if you are guilty, you still have a

14  choice.  It is up to you to decide what to do, not your lawyer

15  or anyone else.  You may plead guilty, as you apparently wish

16  to do, or you may plead not guilty and let the Government

17  through its proof establish your guilt beyond a reasonable

18  doubt.  Do you understand that?

19          THE DEFENDANT:  Yes, I do, Your Honor.

20          THE COURT:  And if you did plead not guilty, you

21  would be entitled to a speedy and public trial on the charges

22  set forth in the information.  Do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.  Yes.

24          THE COURT:  But by pleading guilty, you are

25  relieving the Government of its obligation to establish your

1   guilt beyond a reasonable doubt.  Do you understand that?

2                THE DEFENDANT:  Yes, Your Honor.

3                THE COURT:  Now, at any trial you would be presumed

4   innocent.  You would not have to prove that you were innocent.

5   It's the Government's burden to overcome that presumption and

6   prove your guilt beyond a reasonable doubt.  Do you understand

7   that?

8                THE DEFENDANT:  Yes, Your Honor.

9                THE COURT:  Now, at the trial the witnesses for the

10  Government would have to come into open court, testify in your

11  presence.  Those witnesses could be brought and examined by

12  your lawyer.  Your lawyer could object to evidence being

13  offered by the Government.  Your lawyer could raise defenses

14  on your behalf and could even call witnesses that you could

15  compel to testify, even if they did not want to testify.  Do

16  you understand that?

17               THE DEFENDANT:  Yes, Your Honor.

18               THE COURT:  But by pleading guilty you are giving up

19  your right to confront the witnesses who testify against you.

20  You give up your right to raise defenses or offer proof on

21  your own behalf.  Do you understand that?

22               THE DEFENDANT:  Yes, Your Honor.

23               THE COURT:  At the trial, that proof could include

24  you taking the stand and by testifying on your own behalf.  Do

25  you understand that?

Proceedings                                                17

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  But you could not be forced to take the

3   witness stand.  A defendant in a criminal court in the United

4   States cannot be forced to take the witness stand and say

5   anything that could be used against him to show that he is

6   guilty of the crime with which he has been charged.  This is

7   called your right against self-incrimination.  Do you

8   understand that?

9        THE DEFENDANT:  Yes, Your Honor.

10       THE COURT:  Okay.  But by pleading guilty, you are

11  admitting your guilt and you give up your right against

12  self-incrimination.  Do you understand that?

13       THE DEFENDANT:  Yes, Your Honor.

14       THE COURT:  And Mr. Kohut, it actually goes beyond

15  that, as I indicated at the very top of the hearing.  Not only

16  will you be giving up your right against self-incrimination,

17  but you will be obliged to tell me facts that, in fact,

18  incriminate you, that show that you are in fact guilty of the

19  charge to which you plead guilty.  Do you understand that?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  Now, if you do offer your plea of guilty

22  and I accept it, you will be giving up all of the rights I

23  have just discussed with you.  There will be no trial of any

24  kind.  I will simply enter a judgment based on your guilty

25  plea.  Do you understand that?

Proceedings                                      18

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Now, Mr. Bini, is there Appellate waiver

3    in this plea deal?

4          MR. BINI:  There is, Your Honor.  It's set at 240

5    months.

6          THE COURT:  All right.  Now, what is this business

7    of an appellate waiver?  It's simply this, Mr. Kohut:  If you

8    were to go to trial and the jury were to find you guilty, then

9    you could appeal both the conviction and any sentence that I

10   impose, but by agreeing to a plea agreement that contains an

11   appellate waiver you will be giving up your right to challenge

12   or appeal the conviction or all or part of any sentence that I

13   impose, or to attack the conviction or the sentence later on

14   in a collateral proceeding.  Do you understand that?

15         THE DEFENDANT:  Yes, I do, Your Honor.

16         THE COURT:  Now, with all of those understandings it

17   is still your intent to offer a plea of guilty; is that

18   correct?

19         THE DEFENDANT:  That's correct, Your Honor.

20         THE COURT:  Then we will proceed on that, and as I

21   understand it from Mr. Villanueva, there is a signed plea

22   agreement as well?

23         THE COURTROOM DEPUTY:  There is, Your Honor.

24         THE COURT:  And I am sure Mr. Villanueva has marked

25   it and, if not, it will be marked as Court Exhibit 1.

Proceedings                                             19

1        And, Mr. Kohut, you said you signed it; correct?

2        THE DEFENDANT:  Yes.

3        THE COURT:  And, Mr. Fels, you've signed it as well?

4        MR. FELS:  I have, Your Honor.

5        THE COURT:  And Mr. Bini, who signed for the

6   Government?

7        MR. BINI:  I signed it, Your Honor, along with David

8   C. Pitluck of my office, and Derrick Ettinger signed it.

9   Another attorney from the section, David M. Fuhr, signed it;

10  and Ann Brickley signed it along with Mary Butler, also from

11  the Department of Justice from the MLARS section.  Money

12  laundering and asset recovery section, MLARS.

13       THE COURT:  We have a lot of cosigners today.

14       MR. BINI:  Yes, we do, Your Honor.

15       THE COURT:  Okay.  Now, Mr. Kohut, before you signed

16  that plea agreement, did you discuss it with Mr. Fels?

17       THE DEFENDANT:  Yes, we did -- yes, I did, Your

18  Honor.

19       THE COURT:  And did you read it yourself?

20       THE DEFENDANT:  Absolutely, yes.

21       THE COURT:  And you signed it -- when you signed it,

22  did you understand it?

23       THE DEFENDANT:  Yes, I did, Your Honor.

24       THE COURT:  Do you understand it now?

25       THE DEFENDANT:  Yes, I do, Your Honor.

Proceedings                                          20

1          THE COURT:  Do you have any questions about it now?

2          THE DEFENDANT:  No.  No, Your Honor.

3          THE COURT:  And this is the only agreement or

4     understanding that you have with the Government about this

5     case?

6          THE DEFENDANT:  As I understand, yes.

7          THE COURT:  Okay.  Well, that is what is important.

8          THE DEFENDANT:  Yes, it is, Your Honor.

9          THE COURT:  Now, Mr. Fels, you reviewed this

10    thoroughly with Mr. Kohut?

11         MR. FELS:  I did, Your Honor.

12         THE COURT:  And based on your conversations with

13    him, as you went over it with him, did you believe he

14    understood the document?

15         MR. FELS:  I do, Your Honor.  I do believe he

16    understood the document.

17         THE COURT:  And do you believe when he signed it did

18    he did so voluntary?

19         MR. FELS:  Yes, Your Honor.

20         THE COURT:  And to the best of your information and

21    belief, other than this plea agreement, there is no other

22    agreement or deal that Mr. Kohut has with the Government about

23    this case?

24         MR. FELS:  That is correct, Your Honor.

25         THE COURT:  So let me move on again.

1          Mr. Kohut, similar to what we have done in other

2   aspects, I know that you and Mr. Fels have already done this

3   privately, but it's important to go over the highlights of the

4   potential consequences of your plea in public, on the record,

5   to assure me and perhaps other judges reading the record later

6   that your decision to enter into the agreement was knowing and

7   voluntary.  What we want to do now is go over what we call the

8   possible consequences of the plea, and with Mr. Bini's

9   assistance, we will do just that.  The first area of inquiry

10  is the possibility of imprisonment.

11          And what's the minimum and maximum on this charge?

12          MR. BINI:  Your Honor, there is a minimum penalty of

13  zero years imprisonment, so no minimum penalty, but there is a

14  maximum term of imprisonment of 20 years in prison.

15          THE COURT:  All right.  So that translates to the

16  sentence will be somewhere between zero and 240 months; is

17  that correct?

18          MR. BINI:  Yes, Your Honor.

19          THE COURT:  And do you understand that to be the

20  case, Mr. Kohut?

21          THE DEFENDANT:  Yes, I do, Your Honor.

22          THE COURT:  All right.  Now there is also, one of

23  the other potential consequences is what's known as supervised

24  release.  Supervised release refers to that period of time

25  following any period of imprisonment.  A defendant who has

Proceedings                                        22

1   been imprisoned who will be released from jail on supervised

2   release with certain terms and conditions of release, and if

3   during a period of supervised release that defendant were to

4   violate one of the terms and conditions, well, then that

5   defendant could be sentenced back to prison for additional

6   jail time.  Do you understand that?

7            THE DEFENDANT:  I do, Your Honor.

8            THE COURT:  Mr. Bini, is this the standard zero to

9   three on supervised release?

10           MR. BINI:  That's correct, Your Honor.

11           THE COURT:  So in this particular case, Mr. Kohut,

12  the sections of law that apply sets the minimum term at zero

13  and the maximum term of supervised release as three years.  So

14  the Court will impose a period of supervision of zero to three

15  years and if during that term you were to violate one of the

16  terms of the conditions of release, you could be sent back to

17  prison for two additional years without credit for any time

18  previously served in prison or time previously served on

19  supervised release.  Do you understand that?

20           THE DEFENDANT:  Yes, Your Honor.

21           THE COURT:  Now, it's about to get more complicated

22  at this point when we ask about the provision that deals with

23  fines.  How does it read, Mr. Bini?

24           MR. BINI:  Yes, Your Honor.  The greater of $500,000

25  or twice the value of the monetary instruments or funds

Proceedings                                        23

1   involved in the transactions and in this particular case, Your

2   Honor, that second part of the maximum may apply and there was

3   more than $22 million in bribes that were paid to officials as

4   part of the money laundering conspiracy.  And so the

5   Government thinks that that fine amount to be twice that.

6               THE COURT:  Which would be 44 million?

7               MR. BINI:  Yes, Your Honor.

8               THE COURT:  Okay.  That's the potential.  Whether or

9   not that would be Constitutional, that would be an issue that

10  I am sure we would hear Mr. Fels speak to at an appropriate

11  time.  But as far as issues to confront, Mr. Kohut, that would

12  be the potential consequence.  Do you understand that?

13              THE DEFENDANT:  Yes, I do, Your Honor.

14              THE COURT:  Mr. Bini told me prior to the hearing

15  that I believe there is some further understanding on the

16  issue of forfeiture; is that correct?

17              MR. BINI:  Yes.  The defendant has agreed to

18  criminal forfeiture in the amount of $2,200,000 as set forth

19  in his agreement with the Government.

20              THE COURT:  And there's some timing on this as well

21  as I understand it?

22              MR. BINI:  That's correct, Your Honor.  The

23  defendant is required to pay $1 million within 30 days of his

24  guilty plea and the balance of the forfeiture funds are due at

25  the time of sentencing, Your Honor.

Proceedings                                    24

1          THE COURT:  Mr. Kohut, is that your understanding as

2    well?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  And you did voluntarily agree to that?

5          THE DEFENDANT:  Yes, I did, Your Honor.

6          THE COURT:  All right.  Besides the fine and

7    forfeiture, there is also, I presume, a mandatory restitution

8    requirement?

9          MR. BINI:  Your Honor, there is an agreement and the

10   defendant was placed on notice by the Government that he would

11   owe restitution if that is determined by the Court as

12   applicable here.  Based upon the Government's knowledge of the

13   case thus far, we do not know of any restitution obligations

14   thus far.  However, if some victim came forward and it was

15   found to be a victim or the party turned out to be a victim,

16   it is possible.

17         THE COURT:  So you understand that that's an open

18   question, Mr. Kohut, that we really can't answer today, but

19   there was an open-ended restitution obligation?

20         THE DEFENDANT:  I understand, Your Honor.

21         THE COURT:  All right.  And there is also a special

22   statutory assessment that the Court must impose of not less

23   than $100.  Do you understand that?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Now, are you a citizen of the United

Proceedings                                    25

1   States, Mr. Kohut?

2            THE DEFENDANT:  No, I am not, Your Honor.

3            THE COURT:  So as a result of your plea, you could

4   be deported to -- excluded, deported or removed from the

5   United States.  Do you understand that?

6            THE DEFENDANT:  Yes, I do, Your Honor.

7            THE COURT:  Mr. Bini, have I overlooked any other

8   potential consequences?

9            MR. BINI:  No, Your Honor.  You have touched on all

10  of the consequences that are set out in the parties'

11  agreement.

12           THE COURT:  And I just want to -- I call it the

13  potential consequences but they are somewhat open-ended.  The

14  one thing that is not open-ended, Mr. Kohut, is simply this:

15  That Appellate waiver is part of the deal and essentially

16  because the waiver is set at the maximum, that effectively you

17  are giving up your right to appeal your conviction and

18  sentence.  Do you understand that?

19           THE DEFENDANT:  Yes, Your Honor.

20           THE COURT:  And you are also giving up your right to

21  challenge it in a collateral proceeding later.  Do you

22  understand that?

23           THE DEFENDANT:  Yes, Your Honor.

24           THE COURT:  Okay.  What comes next is the process of

25  sentencing itself and I want to go over that with you.  That

                    SN       OCR      RPR

Proceedings                                                26

1   begins with the work of the United States Probation Office.

2   The Probation Department will begin a separate investigation

3   into the charges and a separate investigation into your life,

4   whether your business, your health, your education, whether

5   you have a prior criminal record and every other aspect of

6   your life, and make a report to you and Mr. Fels and to

7   Mr. Bini and to me, what they find in their pre-sentence

8   investigation.

9           Also included in that report will be the Probation

10  Department calculation of what the sentencing guidelines show.

11  And the sentencing guidelines are promulgated, the guidelines

12  are promulgated by the United States Sentencing Commission.

13  They pinpoint a specific sentence for any given crime.  They

14  refer to factors that lead the Court to depart or vary from

15  that point, either upwardly or downwardly.

16          Now, these guidelines are no longer mandatory, but

17  they do remain advisory so that in determining what your

18  sentence will be, the Court will take, as is required, advice

19  from the guidelines.  Do you understand that?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Now, as I say, Probation will begin its

22  work and work its way to that computation among its other

23  findings and no one can predict with precision what the

24  Probation Department will find and certainly not even I can

25  predict what I will do with that recommendation at the time of

Proceedings                         27

1   sentence, but we can predict this:  It will be in the report

2   that is sent to you and to Mr. Fels and to the Government.

3   After everyone has had an opportunity to digest that violation

4   report we will schedule a date for another hearing.  God

5   willing, we should be all physically present in the same room,

6   I would pray, but as they say, if you want to make God smile,

7   tell him you have a plan.  So wherever it is that we gather,

8   when we gather, then the process will be the same.  And that

9   process will begin with the lawyers making their argument to

10  me as to what the Sentencing Guideline should be, and I will

11  make a determination as to what the guidelines are in this

12  case.

13          Having done that, we will then proceed to the

14  sentencing process itself, which is controlled by another

15  section of law, Title 18 U.S. Code section 3553(a), which sets

16  forth the objectives, standards and goals for a court to

17  achieve its sentencing of a defendant.  Nothing too

18  earth-shattering.  It's probably the kinds of things that an

19  average citizen would expect the Court to do.

20          One of the objectives, of course, is to assess what

21  the crime is and the more serious the crime then the

22  guidelines say, the 3553(a) is essentially the more serious

23  the punishment and that there ought to be an aspect of

24  punishment in sentencing, imposing something that hurts and in

25  the modern era that something is usually the taking of time

Proceedings                                      28

1   when someone is put in a custodial situation and that's what

2   works.

3          This also works into another obligation imposed on

4   the Court which is to impose a sentence that promotes respect

5   for the law.  Congress passes these laws and attaches

6   penalties to them so if the Courts weren't imposing those

7   penalties, there weren't be much respect for the law.  So that

8   remains a concern.  That also dives into the concept that it

9   should hurt, that punishment should hurt enough so that it

10  teaches the defendant not to do it again.  I refer to that as

11  the hot stove aspect.

12         There's also an aspect of general deterrence.  If

13  someone is punished as an example, it says to the public at

14  large basically don't do what this defendant did because the

15  punishment that's been visited on him will ultimately be

16  visited on you.  So there is an aspect of general deterrence.

17         There is also a concern at times for incapacitation;

18  that a defendant may be so dangerous to the community, to

19  society sat large they have to be put away and kept away from

20  society.  And there is also a concern for rehabilitation for

21  the most part.  Not in every sentencing, but for the most part

22  people who are sent to jail come out of jail and so there is a

23  concern for reentry; that a defendant is going to reenter

24  society and that he or she has the ability to more likely

25  succeed legally on reentry.

1           And there is also instructions that treat individual

2      characteristics of the defendant and in a way it should read

3      on a sentence.  And there is also a command that after the

4      court were to balance all of these factors that the Court

5      impose a sentence that is no harsher than necessary to achieve

6      the sentencing objectives.  Do you understand the process of

7      sentence?

8           THE DEFENDANT:  Yes, Your Honor.

9           THE COURT:  All right.  Now, as I indicated to you,

10     no one can predict with precision what the Sentencing

11     Guidelines are going to recommend in this case.  The lawyers

12     can look at the facts and make an assessment or guess as to

13     what the guidelines are likely to be.

14          Mr. Bini, has the Government made any assessment of

15     what the guidelines are likely to be in this case?

16          MR. BINI:  Yes, Your Honor.  The Government

17     calculates the total offense level at a 42, minus the three

18     points for acceptance of responsibility at a 39, which would

19     recommend a guideline sentence of 262 to 327 months.  Here,

20     because the single count is a 20 year statutory maximum, the

21     recommendation would be 240 months.

22          The reason for the Government's calculation is we

23     looked first to 2S1.1A1 for money laundering and then to the

24     offenses that were involved, the SUAs in this money laundering

25     conspiracy, violations of the Foreign Corrupt Practices Act

Proceedings                                                    30

1   and the bribery laws of Ecuador.

2           So from 2(s)1.1 we looked to 2C1.1(a), which

3   establishes a base offense level of 12.  There is an

4   enhancement for more than $9.5 million in bribes of 20 points.

5   There's an enhancement for more than one bribe of two points.

6   There is an enhancement the Government calculates of four

7   points for involvement of a high-level public official in the

8   country of Ecuador.  There's an enhancement now back under the

9   money laundering guideline 2S1.1(a)(b) for a conviction under

10  Title 18 U.S. Code section 1956.  That's a two-point

11  enhancement and then the Government calculates a two-point

12  enhancement for sophisticated money laundering.

13          THE COURT:  Okay.

14          MR. FELS:  Your Honor, would you mind if we just had

15  a slight break so I could speak with my client for just a

16  moment?

17          THE COURT:  Absolutely.

18          MR. FELS:  We will be back in just a few minutes.

19          THE COURT:  We will recess.

20          (Pause in proceedings.)

21          THE COURT:  Mr. Fels, have you had a chance to

22  confer with Mr. Kohut?

23          MR. FELS:  Yes, Your Honor.

24          THE COURT:  And we are ready to proceed?

25          MR. FELS:  We are Your Honor.

Proceedings                                                31

1      THE COURT:  I believe where we broke off, I was
2  going to ask you if you made any computation as to what the
3  guidelines would show.
4      MR. FELS:  Your Honor, we're going to obviously
5  preserve our objections to some of the guidelines that the
6  Government believes, but that's at a later point.
7      THE COURT:  Mr. Kohut, I was asking counsel about
8  this just so that you have advice, that you have in mind.  The
9  fact of the matter is that if all of their computations were
10 to prove erroneous, it wouldn't matter.  It wouldn't give you
11 the right to withdraw later the plea that you would enter now.
12 Do you understand that?
13     THE DEFENDANT:  Yes, Your Honor.
14     THE COURT:  Now, we sort of actually -- you have
15 actually done one of the things I was going to ask if you
16 wanted to do.  Again, I want to ask if there's anything, any
17 questions that you have, anything that was done at the
18 hearing, you can ask them on the record.  I will try to answer
19 them on the record.  The court reporter will take them down.
20 If you need to speak further with Mr. Fels and other counsel,
21 I would give you time for that, but if you don't need time for
22 either of those two things, then I will simply move to take
23 your plea.  Do you need additional time or are you ready to
24 plead now?
25     THE DEFENDANT:  I am ready now, Your Honor.

Proceedings                                                 32

1        THE COURT:  Mr. Fels, do you know of any reason why
2   Mr. Kohut should not plead guilty at this time?
3        MR. FELS:  I do not Your Honor.
4        THE COURT:  Are you aware of any viable legal
5   defense to the charge?
6        MR. FELS:  Your Honor, we have talked about legal
7   defenses, we have gone over them -- I have gone over them with
8   Mr. Kohut and we have discussed our various strategies and we
9   have agreed and the client, Mr. Kohut, has agreed that this is
10  the appropriate posture taken and he is ready and willing to
11  plead guilty to the Information, Your Honor.
12       THE COURT:  All right.  Then we will turn to that.
13       Mr. Kohut, with respect to the one count in the
14  Information what is your plea, guilty or not guilty?
15       THE DEFENDANT:  Guilty, Your Honor.
16       THE COURT:  Mr. Kohut, are you pleading guilty
17  freely and voluntarily of your own free will?
18       THE DEFENDANT:  Yes, Your Honor.
19       THE COURT:  Has anyone forced you or threatened you
20  to plead guilty?
21       THE DEFENDANT:  No, Your Honor.
22       THE COURT:  Has anyone promised you anything to
23  induce you to plead guilty other than the promises that are
24  set forth in the plea agreement that was marked as Court
25  Exhibit 1?

Proceedings                                                    33

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Has anyone made any promises to you as

3   to what your final sentence will be?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Now, you may recall a couple of times

6   throughout the hearing I mentioned that there would come a

7   point when either in answers to questions or the reading of a

8   narrative, you would have to tell me facts under oath that

9   show that you are guilty to the charge to which you have plead

10  guilty.  We have now reached that point.

11         Mr. Fels, I don't know if you have arranged for

12  question and answer, but now is the time for allocution.

13         MR. FELS:  Mr. Kohut does have a statement that he

14  can read for the record.

15         THE COURT:  That is fine.

16         Mr. Kohut, please proceed.

17         THE DEFENDANT:  So, Your Honor, from approximately

18  2012 to August 2020, I worked in the Bahamas for a trading

19  company handling business development as an employee and

20  independent contractor.  Beginning around 2012 and continuing

21  to about August 2020, I agreed to participate in a scheme with

22  Consultant 1 and 2 and two of my supervisors in the trading

23  company, trading company employees No. 1 and No.  2, to pay

24  bribes to foreign officials in Ecuador through Consultant No.

25  1 and No. 2, to assist trading company in winning business

Proceedings                                          34

1   related to the purchase of oil products from Ecuador state

2   owned and controlled oil company, Petroecuador.

3           I facilitated, promoted and concealed a bribery

4   scheme.  I assisted in engaging Consultant No. 1 and No.  2

5   through consulting agreements that did not include the true

6   purpose of their engagements.  I also received the invoices

7   from the consultants, verified the payment amounts and sent

8   invoices along the approval chain at trading company,

9   facilitating the payment to Consultant No. 1 and No. 2 of many

10  millions of dollars knowing that the consultants would use a

11  portion of the money to bribe Ecuadorian officials on behalf

12  of the trading company.

13          Some of the transactions moved from bank overseas

14  including Singapore through the United States including

15  through the Eastern District of New York and to the

16  consultants' accounts outside the United States.  I had

17  several meetings in the United States in furtherance of the

18  bribery scheme including one of my supervisor's trading

19  company and the consultants to discuss certain of the

20  contracts to which bribes will be paid and to meeting with a

21  Petroecuador official, Ecuador Official No. 1, knowing that he

22  would be receiving bribes as part of the scheme.  I knew what

23  I was doing was wrong and illegal.

24          End of statement, Your Honor.

25          THE COURT:  Mr. Bini, did we catch all of the

Proceedings                                              35

1  elements?

2          MR. BINI:  Yes, Your Honor, the Government believes

3  that that satisfies all of the elements including venue.

4          THE COURT:  That being the case, the Court is

5  satisfied as well.  Mr. Kohut, the Court finds based on your

6  allocution and your statement under oath today; that you

7  understand the charge against you; that you understand the

8  consequences of pleading guilty to that charge; that you

9  understand your rights; that you understand the rights that

10 you waive by pleading guilty; that your decision to waive

11 those rights is not only knowing and voluntary; and that

12 finally that you have provided in your allocutions under oath

13 the facts that show that you are guilty of the charge to which

14 you have pleaded guilty.

15         Therefore, I accept your plea of guilt to the one

16 count of the Information.  I won't set a sentencing date at

17 this time, Mr. Kohut, but after Probation has completed the

18 work that we've discussed on the record and counsel has had a

19 chance to review the report, we will set a sentencing date.

20         I assume, Mr. Fels, whenever Probation reaches out

21 to Mr. Kohut, you wish to be notified and to be present in

22 some way?

23         MR. FELS:  I do, Your Honor.

24         THE COURT:  And the record will record that.

25         Is there anything else we need to address?

```
                          Proceedings                    36

 1            MR. BINI:  Not for the Government.  Thank you, Your

 2    Honor.

 3            THE COURT:  How about for you, Mr. Fels; is there

 4    anything we need to address from the defense?

 5            MR. FELS:  No, Your Honor.

 6            THE COURT:  That being the case, good luck to you

 7    Mr. Kohut?

 8            THE DEFENDANT:  Thank you.

 9            THE COURT:  You are welcome.  We will reconvene

10    somehow and some way.  With the help of the Lord hopefully we

11    will get the pandemic over.  Have a good day, everyone.

12            MR. BINI:  Thank you, Your Honor.

13            MR. FELS:  Thank you.

14

15            (Matter adjourned.)

16                          - ooOoo -

17

18

19

20

21

22

23

24

25
```